Good morning everyone. The first argued case this morning is number 2011-1537, DOGLEG RIGHT v. TAYLORMADE GOLF. Mr. Judson. Thank you, Judge Newman. Good morning. May it please the Court, I'm David Judson for the patent owner DOGLEG RIGHT. The District Court's 11th hour clarification of its claim construction of the term wall from a structure on the interior of the shell to one that had to be on the interior cavity of the shell, that change exposed the Court's unduly narrow view of these patents, and in particular that they only cover weights positioned completely or fully inside the cavity of the shell along the innermost surfaces of the shell reached through an access port in the golf club head. Because that came from the specification, did it not? No, I think what happened was that the original claim construction which we thought was broad and we agreed with, which was a little bit unclear because it referred to the word wall as opposed to the term walls, said that a wall could be any interior structure of the shell. And so what happened on summary judgment after the claim construction is that the Court narrowed that construction to say it's not just any interior structure, but rather an interior structure that's located in a particular place and in particular the innermost surface. Now the specification in figure four in particular, figure four, shows a wall that is not wall 310, a recess, which is a wall because it has the same cross hatching. And that particular wall is not within the innermost cavity of the shell. It's on the edge between the outermost part of the shell and the innermost surfaces. So if you look at figure one of the patent, you can see what the Court did in its modified claim construction. Because in figure one of the patent shows the cover, the removable cover 120, closed. And there's an exploded view in the picture. And in that exploded view, you can see the reference numeral 118. And that area, 118 in figure one, is the area where the judge said that's where the weight have to be able to go. You have to take the cover off and you have to be able to go in to the area in 118 in figure one where there's a cutaway view. And the weights have to be that far in to the structure. And it's our position that the disclosure, and in particular figure four, discloses an embodiment specifically, specifically discloses an embodiment in figure four, where the weight does not have to go inside all the way. In fact, it may rest in the context of figure four. It may actually be located on the cover itself and therefore not within the cavity. So if it's on the cover and then the cover is closed, it is within the cavity. It's not within the cavity because it's on the cover. But because it's in a recessed area 310, the recess prevents the cover with the weight on top of it from being in the cavity. It's actually on the cover but not in the cavity. Regardless of what the specification says, why aren't you bound by the statements you made during prosecution? The district court held there was a disclaimer here. And I can see at least five places where you said things like, nor may the weights in Churchward be placed inside the cavity of the housing as in the precedent invention defined by claims one, ten, yada, yada. Further, the applicant contends the weight structures of the prior art are not shown to be held within the hollow interior of the clubhead as in the precedent invention. Why aren't these statements tantamount to a clear and unmistakable disclaimer? They're not because before the rejection, before that rejection that you're referring to, the claims did not recite a hollow head or multiple positions of the weighting material. Each prior art reference, however, disclosed a solid head, a solid head with a number of sealed compartments for supporting the weights at a corresponding number of fixed locations. After amending the claims to recite the hollow head, that's an important point, and the placement of one or more weights, counsel naturally observed that the art did not provide for weights inside a cavity. That was a natural thing for him to say. That's because the prior art heads were solid. They weren't hollow. They were solid. The statement that you referred to alleged to be a disclaimer was not intended to draw some distinction between external weights or internal weights. Rather, the distinction that was being drawn was one of a hollow shell with plenty of room for weight at varying locations versus a solid head. Not a varying location, a hollow shell with weights inside the cavity of the housing. Right, inside the cavity. The housing is the hollow shell. Right. I don't understand. This is your statement. Because the statements that were being made in the context of the prior art at the time, the prior art at the time was a solid head. And with the distinction that was being drawn here, and the prosecution follows out through a number of office actions, as you know, and additional statements that were made and additional negotiations. But at the time, the distinction was between a hollow shell with plenty of room, a large volume for weight at varying locations, versus a solid head with sealed compartments for supporting the weight at fixed locations. And that argument was carried through. That distinction was carried through. But you're using words today that aren't by any means the words that you used during the prosecution. Yes, if what you just said was the language in the prosecution history, maybe you'd have an argument. But the language in the prosecution history is quite clearly to the contrary, whether it was meant or not. I don't see how we can say the district court was wrong to conclude that this language, especially taken in light of your specification, was a clear and unmistakable disclaimer. Well, there's a – I understand, Your Honor. There's a subsequent set of arguments at A395 and 396, where the language I'm referring to is mentioned, about the varying locations. And there's a discussion at length at that time, the same rejections at issue, where there was a discussion between the difference between a solid head and a hollow head, and the fact that there was insufficient space in these prior heads for the numerous weight locations that allowed the user to place the weights at these different locations and thereby impact ball flight. And that particular argument was at 395 and 396 of the appendix, which was a subsequent office action, and the same references were being referred to and the same arguments were being made. So the arguments I'm making this morning are supported by the overall prosecution history, including the statements that were made at 395 and 396 of the appendix. And those were pages that the district court did not refer to, nor did Taylor Maid refer to those pages as well. So as a whole, we believe that the prosecution history was drawing a distinction between a hollow shell, again with plenty of room for weights at varying locations, versus a solid head with sealed compartments for supporting the weights at fixed locations. And we think that the prosecution history as a whole teaches that distinction when viewed as a whole. So in our position is, of course, that the word wall is not at all in the claims themselves, is referred to in a very broad way without any kind of restrictions. The disclosure disclosures an embodiment, a specific weight uncover embodiment, the one we talked about in Figure 4, which is foreclosed by the court's claim construction. But you dispute that what you're claiming, regardless of how you describe the wall, are internally placed weights. Even the one that's on the court is still internal to the golf club head. It is internal, yes. So the court here interpreted the allegedly infringing structure to be attached and threaded on the outside. And if the court believes that what you're claiming are internally placed weights, then how can you get around the fact that these are externally threaded? It's a good question. The actual dichotomy between external versus internal that you're raising is a little bit of a false issue because the accused weights in the club head, they come in from the outside, which they always have to, but then they're secured on the inside. So the structures that are accused to be the walls in the accused device are actually inside. The structures are inside. Their weights are partially external and partially internal. And if you look at Appendix 633, you can see the inside of the club head. I think I reproduced it at my briefing on page 13. You can see the inside of the accused head with the face taken off. And clearly, the structures that are used to attach the weights in the accused heads are inside. They're clearly inside. Are you telling us that if we agree with you that the limitations on walls, the court's limitations were too strict, that would necessarily include the accused devices? We think we can prove to a reasonable jury that if the court's original claim construction or our proposed construction is adopted, we believe that we can show that the accused heads are within the head. Yes, we believe we can prove infringement. Yes. Okay. Let's hear from the other side. We'll save everybody time. May it please the court. Gary Clark for Appelli Terame Golf. Appellant's complaint that the district court made an eleventh-hour change of direction was really untenable. While the court below rendered a claim construction ruling in which it did put in quotes the very specific words that were the end result of its construction of walls, and as it did in other terms that were at issue in the Markman hearing, it rendered a very long claim construction order. And you cannot read the claim construction order, particularly the section on walls, without understanding that the court meant what it ultimately expressly clarified later in the summary judgment order. And it was clear from the moment the claim construction order issued that what the court meant by its construction of walls was that the weights had to be entirely within the interior cavity. Counsel, you would agree, wouldn't you, that there's nothing about the word wall in and of itself that would imply a plain meaning that suggests that weights have to be on one side of the wall versus the other side of the wall, right? The word walls, to one of skill in the arts, says nothing about inside or outside. In the abstract, Your Honor, I would agree with you. You just look at the term wall. Our position going into the claim construction hearing actually was that the term wall actually has two connotations. One is a three-dimensional structure, and the other is a surface. If I say mount the painting on that wall, I mean mount it on that surface of that wall, and that was our argument. But what was more important about the claim? The district court didn't adopt that argument, that a wall is only a surface, right? Because if he did, then he would have had to say on the inside of the wall, because the inside of the wall implies that there's an outside of the same wall, doesn't it? Right. He didn't adopt that argument of yours. Right, Your Honor. You ultimately prevailed, but he didn't conclude that wall was only a… I'm sorry? You ultimately prevailed, but the district court did not construe the claim such that wall meant only one side of a surface. It did not. The district court did not adopt either party's proposed construction of wall. The district court, we think, did exactly the right thing. So if the district court, if the word wall in the abstract, the plain meaning of the word, doesn't include a limitation that it should be on the inside, what is left? Is there a lexicography, a clear and unmistakable lexicography in the specification, or do you hinge your argument on disclaimer? Well, what's left, Your Honor, is that both parties going into the claim construction proceeding urged the court to adopt a construction along the lines that the court adopted. As part of the workup to the Markman proceeding, the initial claim construction that was proposed by Dogleg Wright was just that wall is a structure. We made the point to Dogleg Wright in that process of conferring prior to the Markman proceeding that that raised a written description defense because this patent is entirely about putting weights inside the cavity of the golf club head. How do you respond to your opponent's argument that the references to the cavity appear in the background section and that we're not supposed to give that substantial weight? And it's part of the summary. When you look at the summary of the invention, it says flat out that you have a hollow golf club head, you have an opening or a port into that golf club head, and the point of the opening of the port is to put the weighting material inside the golf club head. So it's the fundamental statement of this invention. And when we went into court, both parties, Dogleg Wright was essentially persuaded by our threatened written description defense to modify their claim construction position and we ended up both going to the court saying, in order to preserve this patent over a written description defense, the court needs to interpret the term walls as providing some means of placing the weight inside the interior cavity and that's in fact what the court did. And that's what this court is presented with, a markment proceeding from below where both parties in effect abandoned or waived the argument that the wall is simply a three-dimensional structure without any other characteristics. How do you respond to the argument that if you read wall the way ultimately the court did in the summary judgment motion that it reads out the embodiment disposed in figure four where it specifically says that the weighting port cover could be recessed from the sole on the wall portion. In other words, it does not discuss the weighting portion of the port cover actually going up into the cavity. Right. It might be internal, but according to your opponent, it's not actually in the cavity.  When that port cover is applied to the opening in the golf club head, the inside surface of that port cover just becomes another inside surface of the shell. Yes, it may be stepped down a little bit. Of course, that recess is optional. The description in the invention in the patent makes clear that there doesn't have to be a recess there. It's not required that there be any step in there. If you can imagine yourself being inside the golf club head once the port is closed and you look around, the interior surface of that port cover is just another surface of the shell. The weight that's on that interior surface of that port cover looks like all the other weights that are in the interior surface. That's a false distinction. There's no distinction to be drawn to say that the weight that's on the interior of the port cover is somehow of a different character than all of the other weights that are on the interior surfaces of the shell. What about the argument that your product actually, while screwed on or threaded on the outside, actually distributes the weight into the shell? The only thing that goes into the shell is a very small amount. Dogleg Wright itself said it slightly intrudes into the shell. It's the screw tip, which is just a very, very minor part of the weight. That really happens only because you want to make sure that these weights, in fact, are securely fastened to the shell. Excuse me, counsel. You all standing up there, could you please find a seat? If that's a cup of coffee, there is no liquid allowed in our courtroom. Could you please remove it? Sorry to interrupt your argument, but it was very distracting for me. Go ahead. Let me ask you another question, then, with respect to your infringement argument. Is your non-infringement claim that you don't put weights inside the cavity, or is the non-infringement claim that the holes through which your weights are screwed  Our position is that we say we don't do either one of those. Let me explain. First of all, we say the screw hole at the bottom of our ports is not an interior surface of the cavity. We say that when the court talked about interior surfaces of the cavity, he meant the horizontal, if you will, or planar surfaces of the cavity that define the interior surface space. That hole through the shell, we say, is neither an exterior surface nor an interior surface. The exterior surfaces are the planar surfaces, if you will, or the broad surfaces of the outside of the shell. The interior surfaces are the broad surfaces that define the cavity. A hole from the exterior to the interior is neither an exterior surface nor an interior surface. So the argument is, it's not whether the weight actually makes its way inside the cavity, it's whether the weight is attached inside the cavity. Is that right? Yes. And we say the court was exactly right. It said the wall has to have an interior attachment surface, and it meant the broad, if you will, horizontal surfaces of the interior cavity. Attachment surface? Is that in the claim construction of walls? His claim construction of walls says it has to have a weight attachment surface on the interior of the shell. Okay. But one of the things I don't understand about that is these claims used to have that limitation. These claims during prosecution said a court formed through the housing to allow placement of material at, and this part is underlined, at one or more positions on the inside surface of at least one of said walls. So it used to be the case that parent claims had an express limitation, not just weights on the walls, but weights on the, quote, inside surface of the walls. And during prosecution, they decided to remove that limitation during the same prosecution, not a continuation, but the same prosecution of the parent. So why does it continue to serve as the district court held as a disclaimer, or why does it continue to limit the claims when they expressly removed that limitation during prosecution? Because, Your Honor, I think two reasons. First of all, even after removing those limitations, they concluded their presentation to the examiner in that amendment in July of 2004 by saying all the arguments we've made up to this point in time about how this invention as claimed distinguishes over the prior art, particularly churchward and son, still apply. So they said all these arguments, and the arguments include... Where did they say that? Show me the page. Where did they say all the arguments? Show me the page of the prosecution history where they say all the arguments, including what we said about churchward and son, still apply, because I think that's a bit of an exaggeration. Your Honor, that is... It's in the July 04 amendment. Page of the appendix would be helpful. Maybe my associate can get it for me here a moment, Your Honor. You may want JA 420. Is that what you're looking for? Something about that, in that area? So it says, it's in the appendix, Your Honor, at 419, A0419. And after having amended this claim, it says, for the reasons stated by applicant in his May 1, 2003 response to the November 1, 2002 office action, and the remarks included by applicant in his January 5, 2004 request for continued examination, it is respectfully submitted that these claims also distinguish over son and churchward. So he said for those reasons, the reasons stated previously in those amendments. Right, but I'm a little hesitant to say that amounts to a clear and unmistakable disclaimer when those amendments contained two sets of arguments. One was related to volume, the 50% limitation, and the other was related to inside of the cavity. And for both of those arguments, they amended the claim. Well, at one point in time, the examiner clearly told them that the inside of the cavity isn't going to be good enough to get over these references, and the 50% is too ambiguous to satisfy 112. So they then abandoned entirely, clearly, the inside of the cavity limitation. They took that limitation out of the claim. So it's a clear and unmistakable disclaimer. It's hard for me to conclude based on that prosecution, or at least someone could arguably say, they did try that argument, but when the examiner made it clear it wouldn't be successful, they withdrew it, and their claims are no longer so limited. Well, they had made two arguments, as you say, in the prior amendments. One was the size of the cavity, and one was where the weights go. And they did basically get rid of both of those. Well, they maintained the size of the cavity in different words, right? Didn't they, in response to the 112, modify the language they used to still talk about the amount of the volume? I think the problem with what I'm suggesting, and tell me if you think I'm right, is that if there's no limitation as to where on the walls the weights have to be placed, they're going to run into a really big invalidity problem, which is why you both went to the judge and made suggestions about limiting the word walls. Is that right? Is what right, Your Honor? If there is no limitation regarding where the location of the weights has to be in these claims, there's going to be a big invalidity problem, isn't there?  Because we would say that when you read this claim, in the context of the invention that's described in this patent, the claim starts off saying, we have a shed. But we don't read limitations in from a specification. And if there is no disclaimer in the prosecution history, you're stuck with walls, which is a three-dimensional structure, and the weights could be inside or outside. So let's assume, hypothetically, that that's what I wanted to construe the claims as. Then there's a huge invalidity problem, isn't there? I mean, the very references the examiner cited, Churchward and others, would clearly read on these claims. Right, but if I may finish, Your Honor, the claim starts off and says that the walls collectively define a hollow body having an empty cavity. Then the claims say that there's an opening in the body, or in the shell. And then the claims say that the weights are secured along the walls of the shell. Well, if you go back and look at the opening introduction of the term walls, the point of introducing the term walls in the first instance in the claim is to define a hollow body that has an empty cavity. What aspect of the walls defines the hollow body? It's the interior surface of that wall. The exterior surface of that wall doesn't define a hollow body. You can't tell, looking at the exterior, whether the body is solid or it's hollow. And, in fact, we think it's a reasonable implication of these claims that when the claims talk about walls forming a hollow body and opening into that body and then the weights along the walls of the body, that they're referring to the interior surfaces of those walls. Wouldn't it have made more sense to construe the term shell and determine what exactly was meant by the phrase shell? That might be another way of getting there, Your Honor. We'll take it as it is, so we must move on. We have your arguments. Thank you, Mr. Clark. Thank you. Mr. Judson, you have some rebuttal time. Thank you, Judge Moore. Your point about the prosecution history is well taken. It's consistent with, I think, Phillips in the ruling or the holding of the court that the prosecution history represents an ongoing negotiation between the PTO and the applicant rather than the final product of the negotiation. It often lacks the clarity of the specification and thus is less useful for claim construction purposes. I think that's exactly the case here. The other thing that's interesting about that alleged prosecution disclaimer is when it came up. I think it's important context-wise. The claim construction itself doesn't mention the disclaimer, the alleged disclaimer, which I think is curious because that would have been the place where you logically think you would find a prosecution disclaimer argument. It came up in the summary judgment context because what happened was that TaylorMade went to the judge and said, look, we have externally applied weights, not internally applied weights. So there's this dichotomy between external versus internal that they were trying to bring to the court to say that there was no reason to have a trial, that the claims are clearly not infringed. But I didn't hear Dogleg argue that as a matter of claim construction, weights secured purely to the outside of the wall would fall within the claim language. We didn't make that argument, no. And we're not making that argument. The fact, though, is external weights versus internal weights is itself a little bit of a red herring because... Well, you'd end up invalid if you made that argument in light of several of the prior references of records. No, I think that, I think invalidity... Let me say that, of course, if you change the claim construction and make it broader, there's a more likely scenario that they could try to invalidate the claims, but we'll live with that, frankly. We'll be happy to live with that. If you give us a broader claim construction, we have to fight that battle later. How can you live with that if it excludes infringement? It just looks as if what's needed is a claim construction which is not limited that specifically to the placement of the weights in order to succeed in infringement. Because, well, first of all, I think we're focusing too much on the word walls as it relates to invalidity and infringement. That was your argument, and we assume, since that's what you're telling us, that you think that that's your best shot at embracing their claims. There's a lot of claim limitations in these claims that make the claims relatively narrow, and if the word walls is broadly construed, we believe we can prove infringement even under that scenario without invalidating the claims. So we're willing to take the chance that if you broaden the definition of walls to what we think would be the natural definition given the lack of a lexicon, given the excluded embodiment that the construction has, and given the lack of a prosecution disclaimer, we're willing to accept a broader definition, the risks of a broader definition of how it might invalidate the claims. We don't think it will invalidate the claims. We think we have very strong arguments that the claims are not invalid, but that's a battle that I think we'll have to fight at the district court as opposed to here. You're willing to accept the construction that I was questioning your opponent about, but you didn't make an argument for that construction below. And in fact, like at page JA31, the district court opinion says both parties agree the patent can disavow golf club heads having exterior weight attachment surfaces. You argued instead for the little port entrance, the flanges, or whatever you want to call those little things. You never argued that the claim did not contain a limitation that required inside. You instead argued that attachment on those little flanges is inside. So how in the world do I adopt a claim construction that I proposed during oral argument, which is not one that you or the other side proposed? Well, the one that we asked for is distinct structures that collectively form a hollow golf club head body, some of which have weight attachment surfaces on the interior of the shell. That's what we proposed to the district court. That's what we proposed in our briefing here. We suggest that's the closest definition to the specification that we can come up with. And we don't think that that definition per se raises an invalidity issue for us. Well, that's a definition you said that is consistent with the specification, but I don't know that that's consistent with the claim. The word walls either means inside or it means either. But how does it mean sometimes inside? Well, because the... I'm not sure I understand the question. I'm sorry. Okay, well, I guess either the walls contains a limitation regarding where the weight attachments have to be secured, or it doesn't. And if it doesn't, your definition doesn't comport with that either because your definition is sometimes the weights have to be on the inside and sometimes they don't. Either the claim has a limitation regarding location of the weights or it doesn't. Not sometimes it does. Yeah, it should have a limitation. It should have a weight attachment surface associated with a wall. I think that we agree with that, if I understand your question. So the walls refer to interior, in this case our interior. The shell has a set of walls and the weight attachment surfaces are on the inside, yes. Okay. Thank you, Mr. Judson. Thank you, Mr. Clark. The case is taken into submission.